# Charlestown.

ROWLAND *et al. v.* ROWLAND *et al.*

Decided September 10, 1877.

1877.
August Term.

1. The fact, that an *ex parte* settlement, made by an executor must be surcharged and falsified, before the payment of a certain legacy can be enforced, will not justify the legatee in instituting a suit to recover such a legacy, before it is payable.

2. In a proper case a suit may be brought for the preservation of a legacy before, it is payable.

3. A bill to surcharge and falsify an *ex parte* settlement, made by an executor, may be brought by a legatee, before his legacy is payable, only when the difficulties of surcharging and falsifying the settlement would be greatly increased were the suit delayed till the legacy was payable; and the bill, in such a case, must allege facts showing that such difficulties would be so increased by such delay.

A suit in chancery was pending in the circuit court of the county of Mercer, in which Mary F. Rowland and Louisa Rowland, were plaintiffs, and Kensie Rowland and others, were defendants. The final decree was rendered on the 9th day of May 1876 by the Hon. Evermont Ward, Judge of said court. The other decrees in the cause were rendered by Hon. Henry S. Gillaspie, a former Judge of said court. This appeal with *supersedeas* was allowed upon the petition of the defendants below.

The following statement of the case is furnished by GREEN, PRESIDENT, who delivered the opinion of the Court:

The plaintiffs, infants under the age of twenty-one years, by Isaiah Bee, their next friend, in 1872 filed their bill in the circuit court of Mercer county, against

1877.
August Term.

Rowland et al.
v.
Rowland et al.

Kensie Rowland, the executor of James William Rowland and the sureties in his executorial bond, and the personal representatives of such of them as were dead, and Albert P. Bryan, and Susan his wife, late Susan Rowland, the widow of said James William Rowland and John A. Douglass, trustee. In their bill they allege, that James William Rowland, their father, died in 1859 in said county, leaving a will, a copy of which is filed with the bill; and that Kensie Rowland, his father qualified as his executor, giving an executorial bond in the penalty of $10,000.00, with five sureties; that, with the exception of a few specific bequests to his widow, the testator directed all his personal property to be sold, and the proceeds to be equally divided between his said widow and his children, the plaintiffs; that is, one-third part to each; that his personalty was sold by his executor according to directions, contained in the will, on September 3, 1859, and brought $5,557.70, as appears by a copy of the sale bill filed with the bill; that Kensie Rowland made no settlement of his accounts till 1870, when he made a settlement before Peck, a commissioner, who did not return it: and in 1871 this settlement was completed before McNutt, another commissioner, who returned it to the court with the vouchers and depositions on which it was based. This settlement was confirmed by the recorder, and ordered to be recorded; and a certified copy of it is filed with the bill. By this account there was found due from the estate of James William Rowland to his executor, Kensie Rowland, $1,351.29, as of February 15, 1870. This settlement, the bill charges, " was grossly unjust, improper, false and erroneous, and so far from there being any balance due to said executor, he was largely indebted on his executorial accounts." And it proceeds to surcharge and falsify it in various particulars specified. Among the items, surcharged and falsified, is an item of $861.00, as of date February 15, 1870, because it was for the support of the plaintiffs after the death of their father, and because after

their father's death the executor had nothing to do with their support, it being a matter which belonged to their guardian, and to him only. The bill alleges that two of Kensie Rowland's sureties in his executorial bond have died insolvent, and that Kensie Rowland had, in 1870, executed a deed of trust, conveying certain real estate to secure his three sureties in his official bond, Robert B. McNutt, Robert Hall and Elliott Vawter, and the estates of said deceased sureties, against loss by reason of such suretyship; in which deed John A. Douglass was trustee, who is made also a defendant to this suit. The bill asks that said settlement of the executorial accounts of Kensie Rowland may be corrected in the particulars pointed out, and in such other respects as it may be shown to be erroneous; that a reference may be made to a commissioner, to settle anew said accounts; that a decree may be rendered in favor of the plaintiffs for such amount, as may be ascertained to be properly due them, and costs; that the same may be enforced by execution or otherwise against the realty or personalty of the parties liable, as may be adjudged right; and for general relief. The defendant, Kensie Rowland, demurred generally to the bill; and at the same time filed an answer insisting, that his accounts as settled by the commissioner were correct; to which the plaintiffs replied generally. The bill being taken for confessed as to the other defendants, the cause was referred to a commissioner by the decree of June 11, 1872. He made his report, which was excepted to: some of the exceptions sustained, and others overruled; and the cause re-committed by the decree of October 20, 1873. Other proceedings were had in the cause not necessary to be noticed, except the filing of the answer of McNutt, one of the defendants, in which among other things he insists, that, as neither of the plaintiffs were of age or had married, under the will of their father, James William Rowland, they had no cause of action against him or any of the defendants. The commissioner made a

second report, which was excepted to; but all of the exceptions overruled except one, which was to the charging of interest against the executor during the war; and on May 9, 1876 the court decreed, that the plaintiffs recover of the defendants, other than the trustee John A. Douglass, $5,040.27 with interest from that date and costs; and reciting that it appeared to the court that Mary F. Rowland had attained the age of twenty-one and married Creed Terry, it was ordered that one-half of the recovery should be paid to her, and the other half to Isaiah Bee, guardian of Louisa Rowland. Numerous depositions were taken and read at the hearing, the contents of which it is unnecessary to state. The will of James William Rowland, filed with the bill under which the plaintiffs claim, provided after making a few small specific bequests to his wife, as follows: "I desire the proceeds of my estate to be disposed of as follows, to-wit: I give to my wife Susanna, in addition to that which has been bequeathed to her by the second section, one-third of the remainder of my estate in her own right. I give to Mary French Rowland one-third of my estate, *to be received by her when she marries or attains the age of twenty-one.* I give to Sarah Louisa Rowland one-third of my estate *to be received by her when she marries or attains the age of twenty-one.*

5th. I desire, that my executor loan out upon good security the money arising from the sale of my property, bequeathed to my two daughters, Mary F. and Sarah L. Rowland, and out of the interest arising therefrom to apply the same to the education and support of my said daughters. I also desire that my daughters aforesaid shall receive a good English education.

6th. I hereby appoint and constitute my beloved father, Kensie Rowland, executor of my last will and testament."

From the final decree of said court Robert B. McNutt appealed to this Court.

*J. W. Davis and Samuel Price,* for appellants:

A bill to enforce the payment of a legacy payable "When the legatee marries or attains the age of twenty-one," can not be maintained without an averment in the bill, that the legattee has married or attained the age of twenty-one: *Swope* v. *Chambers,* 2 Gratt. 319.

Money loaned by an executor and lost by the casualties of the late war, without the fault of the executor, will not be charged to him : *Lacy* v. *Stamper,* 27 Gratt. 61. An executor should have six months allowed him for the investment of the funds : 12 Gratt. 608.

No decree should have been rendered against the executor, until the legatee give a refunding bond : Section 30, chapter 87 Code, and *Lacy* v. *Stamper,* 27 Gratt. 61. Such was the confusion—the interruption of the courts by the armies during the war—that an executor should have his commissions, notwithstanding his failure to settle his accounts: *Trover* v. *Sharp,* 4 J. J. Mar. 86 ; *Lacy* v. *Stamper,* 27 Gratt. 61. Notwithstanding the wards work in the family and assist the mistress of the house in her daily vocations, the guardian is entitled to charge them board : *Peal* v. *Hickle,* 9 Gratt.; *Armstrong* v. *Walkup,* 12 Gratt. 608; 5 Gratt. 6. An executor acts as guardian, and the commissioner compounds the interest, as if the executor had given bond as guardian, and the securities of the executor are sued ; they can not be held liable for compound interest. They were not his sureties as guardian : *Strother* v. *Hull,* 23 Gratt. 664.

*Johnson & Johnson,* for appellees :

The first assignment of error is not well taken. It is upon the ground that the court erred in overruling the demurrer to the bill, and is based upon the erroneous view, that the suit was brought and bill filed for the recovery of a defined and ascertained sum, for which the executor and his sureties are liable. But the main object is, to have corrected the grossly erroneous *ex parte* settle-

ment of the executor of his fiduciary accounts as such.

It is a well settled principle, that a demurrer necessarily admits the truth of the facts stated, so far as they are relevant and well pleaded : Story's Eq. Pl., §452.

The right to file this bill for correction of said settlement at any time is beyond question. Courts of equity treat matters of legacies as matters of trust, and the executor as trustee : 2 Story's Eq., §1067.

And under that view they would have a right to have his accounts examined into : 2 Story's Eq., §§530, 533 and 539.

A demurrer cannot be good as to part and bad as to part, but must stand or fall together. Story's Eq. Pl., §443.

When a bill in chancery sets forth various claims, and the defendant files a general demurrer, the demurrer will be overruled, if any of the claims be proper for the jurisdiction of a court of equity : *Castleman & McCormick* v. *Veitch et al.*, 3 Rand. 598 ; 9 Pet. 632.

The demurrer being general, and the appellees having a right to be entertained in a court of equity, their bill could not be dismissed for a mere misjoinder of parties; and the objection, if well taken, could only be made by the party improperly joined : Story's Eq. Pl., §§237 and 541.

The trustee Douglass was a necessary party : Story's Eq. Pl. §207.

The third assignment of error is not well taken : the appellees were entitled to decree against principal and sureties : *Chamberlayne et al.* v. *Temple*, 2 Rand. 384 ; *Dabney's adm'r et al.* v. *Smith's legatees*, 5 Leigh 13 ; *Moore* v. *George*, 10 Leigh 228 ; *Allen & Ervine* v. *Morgan's adm'r et al.* 8 Gratt. 60.

The sureties of Rowland have provided themselves a shorter and speedier remedy than the court could give them ; and the court could not change the contract between the principal and sureties : *Hogan* v. *Duke, &c.,* 20 Gratt. 244 ; *Fultz* v. *Davis*, 26 Gratt. 903.

The appellees have a right to pursue their remedy against either principal, or sureties, or all: *Humphrey* v. *Hitt*, 6 Gratt. 524; *Walker* v. *Commonwealth*, 18 Gratt. 18; *Shannon* v. *McMullen*, 25 Gratt. 229; *Cocke* v. *Harrison*, 3 Rand. 494.

Vawter, one of the sureties of Rowland, is insolvent and it was not necessary to decree against an insolvent, even in decrees against sureties: *Dabney's adm'r* v. *Smith's legatees*, 5 Leigh 13; *Montague* v. *Turpin*, 8 Gratt. 453; Story's Eq. Pl., 181.

The remedy of a party, against whom decree has been rendered by default, is not by appeal, but by motion to the court that rendered the decree, to annul and set it aside: *Goolsby* v. *Strother*, comm'r, 21 Gratt. 107; *Same* v. *St. John*, 25 Gratt. 147; *Baker et al.* v. *Western M. & M. Co.*, 6 W. Va. 196; *Davis, sh'ff* v. *Commonwealth*, 16 Gratt. 131; *Hill* v. *Bowyer*, 18 Gratt. 361. The executor, Rowland, had no right to make his testator his debtor, by his (the executor's) own unsolicited and purely officious act: 2 Greenleaf, §107. An executor cannot buy at his own sale; or any part of the estate he has to administer; and he cannot plead his own wrong for his protection; and if he buys he is guilty of a breach of trust, and liable for the property: Perry on Trusts, §205; 2 Redfield on Wills 216. Trustees must follow the direction of the instrument conferring their powers: Perry, §452. And an executor cannot invest in personal securities: Perry §453. A court of equity has power to remove funds from the hands of a fiduciary, that are not being used properly, especially in cases of breaches of trust, and may appoint a receiver for that purpose: Acts 1872–3, pp. 738, 739, §24, and Perry on Trusts, §§275, 818, and may order the funds paid into court: Perry §§818, 824, 826. An executor, who stands by for years, and makes no effort to collect or secure the debts due his testator's estate, must account for the debt. And in this case the executor should not have been allowed a credit for the Brown and Vawter debt of $600.00. (See *Southall* v.

*Taylor,* 14 Gratt. 269.) A trustee, who unreasonably delays or neglects to settle his accounts, when he ought to do so, will be held to pay interest at the rate established by law: Perry on Trusts, §468 ; *Handy* v. *Snodgrass,* 9 Leigh 484; *Lomax* v. *Pendleton,* 3 Call 538; *Miller* v. *Beverlys,* 4 H. and M. 415; *Carter* v. *Cutting,* 5 Munf. 223.

When the debtor and creditor resided within the same territory during the late war, the mere existence of the war does not furnish any legal ground for the abatement of interest. And it was error to abate the interest in this case: *Chapman's adm'r* v. *Sheppard's adm'r et al.,* 24 Gratt. 377. See opinion Supreme Court of Appeals of Virginia, in *Robert's adm'r* v. *Cocke, &c.,* and *Murphy* v. *Gaskin's adm'r,* Virginia Law Journal, March number, 1877.

When it is clear, from the will, that the testator intends his funds to be kept at interest and accumulated for the benefit of his infant children (as in this case) compound interest will be charged, whether the fiduciary be an executor or guardian. He will be treated as having done, what it was his duty to do, and his accounts will be settled as guardian's accounts. *Garrett's ex'r* v. *Carr et ux.,* 1 Rob. 196; same case, 3 Leigh 407; *Strother et al.* v. *Hull et al.,* 23 Gratt. 652. Whoever enters upon an infants estate, is treated as his bailiff or guardian, and charged accordingly. Much more when an executor (as in this case) undertakes to fulfill the duties of guardian, instead of having a guardian appointed according to law, he must be treated as such in his transactions with the infant: *Ganett's ex'r, &c.* v. *Carr et ux,* 3 Leigh 407.

When there is no suggestion of debts against the estate of the testator, it is not error for the court to direct the legacies to be paid over to the legatees: *Copeland, ex'r* v. *McCue et al.,* 5 W. Va. 264.

GREEN, PRESIDENT, delivered the opinion of the Court:

The first question presented to this Court is : ought not the bill to have been dismissed upon the demurrer?

The plaintiffs had no right, under the will of their father, to demand the legacies left them, till they attained, respectively the age of twenty-one, or married. This suit was instituted before either of them attained that age, or was married. Must it, therefore, be dismissed upon demurrer? If the sole object of the bill is to enforce the payment of these legacies to them before they were due, the bill must be dismissed. This proposition seems so clear, as not to require authority to sustain it; but in the case of *Swope* v. *Chambers*, 2 Gratt. 320, the court expressly decided, "that a legacy being made payable on the legatees attaining the age of eighteen, or marrying, the legatee cannot maintain a suit to recover it before the happening of the one or the other of these events." In that case the court say : "the counsel of the infant, conceding that the infant was not entitled, at the institution of the suit, to demand and receive the legacy, indicates the institution of the suit as a proper measure for the preservation of the legacy, until one or the other event shall happen, on which it will be demandable and payable. A sufficient answer to this is, that such is not the nature or object of the suit. It is brought to recover the legacy, not to secure the fund; and being so, it was prematurely brought."

I feel fully justified in adopting this language in the case before us. There is not one word in this bill which looks to the preservation of the legacies, until one or the other event happens on which they are payable; there is no intimation in the bill that these legacies are not entirely safe, or that the sureties of the executor were not able to pay them, or would not probably, or possibly even, continue able to pay them. In fact there is not one word in the bill, from which we would infer, that they were not already due, when this suit was instituted,

except that from a copy of the will, filed with the bill as a part thereof, it appears that they were not due; and if we were permitted to look at the evidence in the cause, it would be seen, that there is not a particle of evidence tending even to sustain a bill, filed for the preservation of these legacies, till they were due. There is no evidence to show that their payment was not, and is not, perfectly safe.

It is insisted however, that the case before us differs from the case of *Swope* v. *Chambers*, 2 Gratt. 320 in this, that in that case the suit was to recover a specific pecuniary legacy requiring no re-settlement of the executor's account. Whereas in this case, the suit is for two-thirds of the personal estate of the testator, to ascertain the amount of which it was necessary to settle the entire executorial account; and in so doing, to surcharge and falsify an *ex parte* settlement, which had been made by the executor, and which by the law was to be regarded as *prima facie* correct, subject to be surcharged and falsified only by a suit *in proper time*: Code of W. Va., chapter 87, section 22, p. 513. There is certainly nothing on the face of the bill to indicate that the main object or end of this suit was to surcharge and falsify this *ex parte* settlement. On the contrary, the sole object and purpose of the suit appears by the bill to be, to enforce out of the executor and his sureties in his official bond, the payment of the legacies of the plaintiffs. To effect this object, the statute made it absolutely necessary to surcharge and falsify this *ex parte* settlement, for if not surcharged and falsified this settlement showed on its face that there was nothing which was due, or ever would be due the plaintiffs. The end of the suit was the enforcement of the payment of these legacies, as a necessary means to this end, and only as such means, the plaintiffs ask, that the executor may be required to settle his accounts before the court, and proceed as required by law to surcharge and falsify his *ex parte* settlement. The bill is in all respects precisely like an ordinary bill to enforce the pay-

ment of legacies, where the *ex parte* settlement shows on its face, that the executor has no estate in his hands, wherewith to pay off legacies. There is not one word in the bill from which we could infer that the object or end of the bill was not to enforce the payment of that legacy, but merely to surcharge and falsify the *ex parte* settlement of the executor. If this was its object, why was not the suit brought against the executor alone? He would have been the only necessary or proper party to such suit. Why were his sureties in his official bond made parties; and why especially was John A. Douglass, trustee made a party? Certainly with no other object than enforcing the payment of these legacies. Surely if the object of the bill was simply to surcharge and falsify the settlement, Douglass, the trustee, ought not to have been a party, as with the settlement of the executorial accounts he was in no manner concerned. The statute, above referred to, provides that a suit to surcharge and falsify an executorial account must be brought in proper time. But this does not in any case impose on the legatee an obligation to bring such suit before his legacy is due. If such suit is brought in a reasonable time after his legacy is due, it is brought in proper time. Why should the legatee be either required or permitted ordinarily to bring such a suit before his legacy is due? Though the *ex parte* settlement be erroneous, its errors may be rectified in a second *ex parte* settlement, or the executor may when the legacies becomes due, settle with the legatee a larger amount, than by the *ex parte* settlement appears to be in his hands. Ordinarily no injury results to the legatee from the admitting of the improper *ex parte* settlement to record until his legacy becomes due, and the executor, relying on such improper *ex parte* settlement, refuses to pay to the legatee the full amount he is justly entitled to. If therefore a legatee is permitted in a particular case, to bring a suit to surcharge and falsify an *ex parte* settlement of an executor, before his legacy is due, it must be for some good reason; the existence in the particular case

of extraordinary facts, which would render it necessary and proper, that the court should inquire into and rectify the settlement at once. It might be proper, if many years would elapse before the legacy became due, and the evidence on which the *ex parte* settlement was based during the lapse of these many years, would probably be lost, by the death of parties or otherwise ; or where the executor had taken steps to render the obtaining of such evidence, after the legacy became due, difficult or impossible ; or when any other circumstances existed, which would render it much more difficult or impracticable to surcharge and falsify the *ex parte* settlement after the legacy became payable. And the legatee having generally no right to institute such a suit, till his legacy was payable, if he institute it before he must be required to set forth in his bill the circumstances, which justify him in bringing such suit. No such circumstances are alleged in this case, and none appear in the voluminous evidence taken in the cause. Neither the bill nor proof show how long a time would elapse before the legacies would be payable, nothing is shown but the simple fact, that pending the suit one of the legacies became payable. For anything which appears in the bill, the legacies, or one of them, might have been payable in a very short time after the instituting of the suit ; there is no allegation in the bill, and no proof that the evidence, on which the *ex parte* settlement was based was likely to be lost before the legacies became due ; or that the executor had fraudulently or otherwise taken steps to suppress the evidence before the legacies became due ; on the contrary the evidence was returned with the *ex parte* settlement. In truth not a single fact is alleged in the bill, or proven in the case, which even tends to show that the *ex parte* settlement could not have been surcharged and falsified as effectually after the legacies became due as before they were payable. The demurrer to the bill should therefore have been sustained, and the bill dismissed at the costs of the plaintiffs. It is true,

that in this case the exhibit filed with the bill, the will of James W. Rowland, taken in connection with the evidence, as understood by the court below, would show that the plaintiffs had, when they instituted this suit, a cause of action. But the action, which they might have had a right to bring was not only not similar to that set forth in their bill, but the existence of the right to bring such action was inconsistent with the positions of the bill. The plaintiffs, while infants and unmarried, had a right to demand a support out of the funds in the hands of their father's executor, assuming that he had sufficient funds in his hands belonging to them, to enable him out of the interest to support them. This right is conferred on them by the fifth clause of said will quoted above. But the plaintiffs by their bill have not only not sought redress of this sort; but in their bill have disclaimed any right to make such a demand of the executor or his sureties. For in their bill they object to the allowance to the executor in his accounts of any charge for their support while infants, saying that it was a matter, which belonged to their guardian and not to him. Ordinarily, if the bill shows that the plaintiffs have just cause of action, the bill ought not to be dismissed when a demurrer is sustained; but leave should be given to amend the bill: *Welton* v. *Hutton*, 9 W. Va. 339; *Baker* v. *Baker*, &c., 3 Munf. 222, and *Jameson's adm'r* v. *Deshields*, 3 Gratt. 13. But here the relief, to which the bill shows the plaintiffs are entitled, is not only different, but inconsistent with the case made by the bill. No leave to amend should be granted; as the setting forth of such cause of action would be really instituting a new suit, and not amending a bill in a suit already brought.

The decree rendered in this cause is assailed for many errors, alleged to exist in it upon its merits by the appellants, and the appellees have assigned counter errors, alleged to exist to their prejudice. But I deem it improper to express any opinion on the merits of the case. This

suit having been prematurely brought, must be dismissed without prejudice to the plaintiffs, to renew it when the time has arrived when they will have a cause of action. And when so renewed, the case may on the evidence be varied from what is now presented; and the action of the court below ought not, in such new case, to be influenced by any expression of opinion by us on the merits of the case, as it now appears.

The decree of the circuit court of May 9, 1876 must be reversed and annulled, and the appellants must recover of the appellees, Creed Terry and Mary F. Terry and Louisa Rowland, their costs expended in this Court. And this Court proceeding to render such decree as the circuit court of Mercer county should have done, doth sustain the demurrer to the bill, and doth adjudge, order and decree that bill of the plaintiffs be dismissed, and that the defendants recover of the plaintiffs their costs expended in the circuit court of Mercer county in said cause, but the dismissal of said bill is without prejudice to the institution by the plaintiffs or either of them, of another suit against the defendants or any of them, when the plaintiffs or either of them shall attain the age of twenty-one years, or marry, to surcharge and falsify the *ex parte* settlement of the executorial accounts of Kensie Rowland, executor of James W. Rowland, and to recover the amount of the legacies left them by the will of their father.

DECREE REVERSED, and cause dismissed without prejudice.